Question Submitted by: The Honorable Richard Morrissette, State Representative, District 92
2015 OK AG 10
Decided: 10/29/2015
Oklahoma Attorney General Opinions

Cite as: 2015 OK AG 10, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
Pursuant to 43A O.S.2011, § 10-111, district courts are vested with jurisdiction to issue and enforce orders restricting visitations with a vulnerable adult. 
1. Does a guardian have the power to solely, and without court order, restrict or terminate visitation with a nursing home resident or other vulnerable adult, or does a ward retain the right to visits from family members or friends? 
2. If a guardian of an adult can restrict or terminate visitation without a court order, by what statutory authority does the guardian have such power?
I.
Introduction
¶1 The answer to your questions requires two inquiries: (1) an identification of the statutory authority for guardianship of an adult in Oklahoma and (2) whether that statutory authority, without a court order, includes the power to restrict or terminate visitation. Additionally, your corresponding point that restriction of visitation may be sought by court order is briefly addressed herein.
II.
Title 30 Governs Guardianship of Adults in Oklahoma and Does Not Provide a Guardian With the Authority to Restrict or Terminate Visitations Without a Court Order.
¶2 Guardianship in Oklahoma is governed by the Oklahoma Guardianship and Conservatorship Act, including Sections 1-101 through 5-101. 30 O.S.2011, § 1-101. Article III of the Act specifically addresses guardianship of adults. 30 O.S.2011, § 1-102. Answering your questions requires a review of the legislative intent of the Act and its substantive provisions. 
A. The Legislature made its purpose clear in establishing the Oklahoma Guardianship and Conservatorship Act, emphasizing maximum self-reliance and independence of the ward.
¶3 The Legislature stated its purpose for establishing a system of guardianship was in part, "to provide for the participation of such persons, as fully as possible, in the decisions which affect them." 30 O.S.2011, § 1-103(B). The Legislature elaborated that "the court shall exercise the authority conferred by the Oklahoma Guardianship Act so as to encourage the development of maximum self-reliance and independence of the incapacitated or partially incapacitated person." Id. § 1-103(B)(1). As to guardians, the Legislature further provided its intent, in part, that guardians should "encourage, to the extent reasonably possible, incapacitated or partially incapacitated persons to participate to the maximum extent of their abilities in all decisions which affect them and to act on their own behalf on all matters in which they are able to do so within the limitations imposed by the court[.]" Id. § 1-103(B)(2)(b). Accordingly, the Legislature made its purpose clear in establishing the Oklahoma Guardianship and Conservatorship Act, to emphasize the maximum self-reliance and independence of the ward.
¶4 Having identified the statutory authority for guardianship in Oklahoma and noting its stated purpose, we review the substantive provisions in that context. "The fundamental rule of statutory construction is to ascertain and give effect to legislative intent, and that intent is first sought in the language of a statute." J.L.M. v. State, 2005 OK 15, ¶ 5, 109 P.3d 336, 338; see also State ex rel. Okla. Firefighters Pension & Ret. Sys. v. City of Spencer, 2009 OK 73, ¶ 12, 237 P.3d 125, 132. Legislative intent is "ascertained from the whole legislative act in light of its general purpose and object." City of Tulsa v. State ex rel. Pub. Emp. Relations Bd., 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220; see also J.L.M., 2005 OK ¶ 5, 109 P.3d at 338. The statutory language will be given its "plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole." Stump v. Cheek, 2007 OK 97, ¶ 9, 179 P.3d 606, 611. Where the "language is plain and clearly expresses the legislative will, further inquiry is unnecessary." Cattlemen's Steakhouse, Inc. v. Waldenville, 2013 OK 95, ¶ 14, 318 P.3d 1105, 1110. 
B. The plain statutory language of the Act does not provide a guardian the power to restrict or terminate visitation.
¶5 A guardian's power to restrict or terminate visitation must be found in the Act itself, or be derived from a court order. Section 3-118 provides that a guardian of an adult "is responsible for the care or control of the ward pursuant to the provisions of the Oklahoma Guardianship and Conservatorship Act, and the orders of the court, and the guardianship plan approved by the court . . . ." 30 O.S.2011, § 3-118(A). Thus, the only sources of a guardian's authority are the Act itself, and the courts. The Legislature went even further, explicitly stating that a "guardian shall have no powers except as provided by the Oklahoma Statutes or given to such guardian in the orders in the guardianship proceeding." Id. § 3-119 (emphasis added). These provisions stating the limitation of power within Article III are congruent with the general provisions of Article I, which include, "[a] guardian has only those powers over the person or the property of the ward, or both such person and property, as ordered by the court pursuant to this title." Id. § 1-119.
¶6 A review of Title 30 reveals the Oklahoma Legislature did not provide a guardian with the statutory authority to restrict or terminate visitations. Such a power is simply not included in the statute. Indeed, Section 1-124 requires the "Administrative Office of the Courts shall prepare a guardianship and conservatorship handbook for distribution to the district courts," which is to include in clear, simple language "the duties and responsibilities of such guardians and conservators." 30 O.S.2011, § 1-124. A review of the handbook likewise provides no mention of the duty or power of a guardian to restrict or terminate visitation, and states "[i]n general, all the powers and duties of the guardian are set forth in the order of the court creating the guardianship." Admin. Office of the Courts, A Handbook for Guardians 6 (n.d.), http://www.oscn.net/forms/aoc_form/adobe/Guardian.-Guardianship-Handbook.pdf (last visited Oct. 12, 2015). 
¶7 Thus, the Act plainly excludes a guardian's power to restrict or terminate visitation. Stump, 2007 OK ¶ 9, 179 P.3d at 611 ("The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole."). 
C. An argument that Title 30 implies the power to restrict or terminate visitations is inconsistent with the legislative intent. 
¶8 To the extent that one might argue language in Title 30 could be implied to confer the power to restrict or terminate visitations, such an interpretation is inconsistent with the legislative intent of the Act as set forth above and in the context of other provisions in the Act. The enumerated duties and limitations both indicate the Legislature did not intend for guardians to restrict or terminate visitations without a court order. 
¶9 Section 3-118 provides some affirmative duties, including in part, to "assure that the ward has a place of abode in the least restrictive, most normal setting consistent with the requirements for his health or safety[.]" 30 O.S.2011, § 3-118(B)(1)(b). The power to restrict visitations is not included in the enumerated duties listed in Section 3-118, and the duty to assure the least restrictive and most normal setting indicates that the Legislature intended the ward to retain the right of visitations. 
¶10 In addition to enumerated duties, there are also some limitations on a guardian's power. 30 O.S.2011, § 3-119. The Oklahoma Legislature provided a short list of limitations but indicated that the list was not exhaustive. 30 O.S.2011, § 3-119 (stating the "limitation of powers includes but is not limited to the following"). The limitations include in part, that "[n]o guardian shall have the power to prohibit the marriage or divorce of a ward except with specific authorization of the court having jurisdiction of the guardianship proceeding[.]" Id. § 3-119(4). A guardian also cannot "consent on behalf of the ward to the termination or relinquishment of parental rights of the ward[.]" Id. § 3-119(2). These limitations strongly suggest the Legislature's desire to leave relationship decisions with the ward. Id. § 3-119.
¶11 Thus, in addition to a lack of any enumerated power to restrict visitations without a court order, it further appears consistent with the Act that the power to control relationships could not proceed without a court order. State ex rel. Pub. Emp. Relations Bd., 1998 OK ¶ 14, 967 P.2d at 1220 (stating that "intent is ascertained from the whole legislative act in light of its general purpose and object"). See also Stump, 2007 OK ¶ 9, 179 P.3d at 611 ("The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole.").
¶12 The Oklahoma Court of Civil Appeals elaborated on the intent of the Legislature to allow wards to determine their relationships and associations in a case where a ward was ordered by a district court to continue visitations with his father. There, the court held the ward "has the right to choose with whom he associates." Id. ¶ 6, 348 P.3d at 230. Most notably, the court went on to address the purpose and intent of the Legislature in Section 1-103, including the provisions to "provide for the participation of such persons, as fully as possible" and to "encourage the development of maximum self-reliance and independence." Id. ¶ 7, 348 P.3d at 230 (quoting 30 O.S.2011, § 1-103). The court held its ruling is "consistent with legislative intent" and that an ordered visitation "does not allow [the ward] to participate in decisions affecting him, nor does it foster his independence." Id. ¶¶ 7-8, 348 P.3d at 230. While this case does not address the power of a guardian to restrict or terminate visitation without a court order, it affirms the legislative intent of the Oklahoma Guardianship and Conservatorship Act. Specifically, it affirms that without a court order, and in this case an order that has a sufficient basis, the ward "has the right to choose with whom he associates." Id. ¶ 6, 348 P.3d at 230.
III.
Where a Guardian Believes Visitation Restrictions are Necessary, the Guardian Should Seek Such a Remedy With the Courts. 
¶13 While the Oklahoma Guardianship and Conservatorship Act does not provide a guardian with the power to restrict or terminate visitation without a court order, such a remedy where necessary may be sought with the courts.
A. The courts may provide guardians with additional powers in guardianship proceedings. 
¶14 As set forth above, the Oklahoma Guardianship and Conservatorship Act states a guardian's powers include those "given to such guardian in the orders in the guardianship proceeding." 30 O.S.2011, § 3-119. Accordingly, should a guardian believe it necessary to obtain authority to restrict or terminate visitations, such power would have to be sought through court orders in the initial or subsequent guardianship proceedings, as it is not provided by statute.[1] 
B. Courts may issue and enforce orders restricting visitation, for the protection of a ward, under the Protective Services for Vulnerable Adults Act. 
¶15 As your question indicates, in addition to court orders in guardianship proceedings, an example of court protection is found in the Protective Services for Vulnerable Adults Acts. This Act provides that any person "having reason to believe that visitation of a vulnerable adult should be restricted may notify the Department of Human Services pursuant to the Protective Services for Vulnerable Adults Act." 43A O.S.2011, § 10-111(D). A vulnerable adult is defined as "an individual who is an incapacitated person" and an incapacitated person includes "a person for whom a guardian, limited guardian, or conservator has been appointed pursuant to the Oklahoma Guardianship and Conservatorship Act[.]" Id. § 10-103(A)(4)(b), (A)(5). 
¶16 Where this procedure is followed, "district courts are vested with jurisdiction to issue orders and enforce orders restricting visitation, by the custodian or by any other person specified by the court, of a vulnerable adult who is receiving or has been determined to need protective services pursuant to the Protective Services for Vulnerable Adults Act." 43A O.S.2011, § 10-111(A)(1). Title 30 references this procedure stating, "Reports regarding the abuse, neglect, or exploitation of an incapacitated person, or a partially incapacitated person shall be made and shall be governed by the provisions of the Protective Services for Vulnerable Adults Act." 30 O.S.2011, § 4-903(A)(3). These provisions ensure a ward is not without means of protection by the courts. 

¶17 It is, therefore, the official Opinion of the Attorney General that:
1. A guardian has no powers except as provided by the Oklahoma Guardianship and Conservatorship Act, or by court orders. 30 O.S.2011, §§ 1-119, 3-118(A), 3-119. 
2. Title 30 does not provide a guardian with the power to solely, and without court order, restrict or terminate visitation with a nursing home resident or other vulnerable adult. 30 O.S.2011, § 3-118(B).
3. Where a guardian believes restriction of visitation is necessary, the guardian should seek such a remedy with the courts. 30 O.S.2011, §§ 1-119, 3-118(A), 3-119. 

E. SCOTT PRUITT
Attorney General of Oklahoma 
TIMOTHY J. DOWNING
Assistant Attorney General 
FOOTNOTES
[1] A guardian should first look to the initial court order of the guardianship proceeding to determine if the power to restrict or terminate visitation is provided, and if necessary seek such authority through Title 30 guardianship proceedings. 

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2005 OK 15, 109 P.3d 336, 
IN THE MATTER OF J.L.M.
Discussed

 
2007 OK 97, 179 P.3d 606, 
STUMP v. CHEEK
Discussed

 
2009 OK 73, 237 P.3d 125, 
STATE ex rel. OKLA. FIREFIGHTERS PENSION AND RETIREMENT SYSTEM v. CITY OF SPENCER
Discussed

 
2013 OK 95, 318 P.3d 1105, 
CATTLEMEN'S STEAKHOUSE, INC. v. WALDENVILLE
Discussed

 
1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, 
City of Tulsa v. State ex rel. Public Employees Relations Board
Discussed

Title 30. Guardian and Ward

 
Cite
Name
Level

 
30 O.S. 1-101, 
Short Title
Cited

 
30 O.S. 1-102, 
Composition of Oklahoma Guardianship and Conservatorship Act
Cited

 
30 O.S. 1-103, 
Purpose and Intent of Legislature
Discussed

 
30 O.S. 1-119, 
Guardian Powers
Discussed

 
30 O.S. 1-124, 
Guardianship and Conservatorship Handbook - Summary of Duties
Cited

 
30 O.S. 3-118, 
Duties and Powers of Guardian or Limited Guardian - Diligent and Good Faith Performance of Duties and Powers - Termination of Guardianship
Discussed at Length

 
30 O.S. 3-119, 
Powers of Guardian - Limitation of
Discussed at Length

 
30 O.S. 4-903, 
Report of Abuse of Incapacitated Person or Minor - Failure to Report - Immunity from Liability - False Report
Cited

Title 43A. Mental Health

 
Cite
Name
Level

 
43A O.S. 10-111, 
Jurisdiction of District Courts
Discussed at Length